WILLIAM JAMES THOMPSON, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 22472

September 3, 1992                                    838 P.2d 452

*Morgan D. Harris,* Public Defender, and *Rebecca A. Geib,* Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney and *James Tufteland* and *David B. Barker,* Deputy District Attorneys, Clark County, for Respondent.

## OPINION

*Per Curiam:*

A jury convicted appellant William James Thompson of attempted fraudulent use of a credit card. After adjudging him a habitual criminal, the district court sentenced appellant to ten years in the Nevada State Prison. Appellant raises two principal issues for our consideration: (1) whether the trial court erred in admitting appellant's confession, and (2) whether the trial court erred in giving a jury instruction that contained presumptions against appellant.

### THE FACTS

On January 18, 1991, James and Ivy Ryans, husband and wife, were walking through a casino in Las Vegas, Nevada, when an

unidentified person snatched Mrs. Ryans' purse and ran off. Mrs. Ryans' purse contained, among other things, JC Penney and Sears credit cards.

Later that evening, appellant and an acquaintance, Rose Burrell, entered a Sears store in Las Vegas and began looking at video equipment. They were assisted by Sears sales clerk William Berman, who became suspicious when appellant showed no interest in anything but the most expensive items. Berman instructed security agents Jimmy Campbell and Steven Rollins to keep watch on appellant. Agent Campbell surveyed appellant and Burrell on a video monitor located downstairs, while Agent Rollins monitored them from the sales floor.

Once appellant and Burrell had selected their items, Berman led them to the register and asked how they intended to pay for the items. Burrell reached into her purse, removed a JC Penney credit card, and offered it to Berman. Quipping, "It would be kind of hard to use that here," Berman refused the card. Burrell then became nervous and began fumbling around in her purse. According to Berman's trial testimony, appellant then reached into Burrell's purse, extracted the Sears credit card, and handed it to Berman. Appellant denies having reached into Burrell's purse and insists that Burrell handed the Sears card to Berman.

Berman attempted to complete the transaction with the Sears card, but the register indicated that the charge card had been lost or stolen. Berman asked Burrell and appellant for identification, and when none was forthcoming, he confiscated the Sears card and summoned Agents Campbell and Rollins. The agents took possession of the Sears card and asked appellant and Burrell to accompany them to the security office. En route, appellant grew recalcitrant and refused to proceed; consequently, Agent Rollins handcuffed appellant.

Once in the security office, the agents questioned appellant and Burrell. Agent Campbell also contacted the Sears customer service center, which informed him that a stolen credit card report had been received earlier that day from James Ryans. Agent Campbell then telephoned the Las Vegas Metropolitan Police Department.

Metro Officer Todd Hyatt arrived at the Sears security office approximately two hours later. Appellant asserts that he complained repeatedly during this two-hour period that his handcuffs were causing him great pain and cutting off his circulation. Appellant further contends that despite his complaints, neither Agent Campbell nor Agent Rollins removed or loosened the handcuffs. Agent Campbell, however, testified that he removed the handcuffs when appellant had to use the restroom and loosened them when appellant complained of pain.

Officer Hyatt first interviewed Agents Campbell and Rollins. Then, after apprising appellant and Burrell of their rights, he began questioning them. According to Officer Hyatt, appellant admitted having attempted to purchase the video equipment with the Sears card and voluntarily wrote the following confession:

> As I was about to enter the shopping mall, I noticed a plastic credit card (Sears) on the sidewalk near the entrance. I picked it up and placed it in my pocket. I then ran into [Burrell] inside the mall. I must back up a bit and say that the reason I came to the mall was to purchase a couple of pair of jogging outfits. But when I met [Burrell], I had other thoughts. Without her knowledge or consent I led her into the store to purchase personal items for myself, including a VCR & Vatamat. I used the card.

Appellant insists that Officer Hyatt coerced this confession. According to appellant, he was in extreme pain from the handcuffs, Officer Hyatt told him the handcuffs would be removed only if appellant wrote and signed a statement saying that he personally used the Sears card, and he agreed to this condition to relieve the pain.

The State subsequently charged appellant with possession of a credit card without cardholder's consent, in violation of NRS 205.690, and attempted fraudulent use of a credit card, in violation of NRS 205.760 and 193.330. Appellant filed a pre-trial motion to suppress his confession on the grounds that it was coerced and was therefore inadmissible, but the district court denied this motion, concluding that appellant gave his confession voluntarily.

Appellant's trial began on April 24, 1991. At the conclusion of the trial, the jury returned a verdict of guilty on the charge of attempted fraudulent use of a credit card. The district court subsequently adjudged appellant a habitual criminal and sentenced him to a ten-year prison term in accordance with NRS 207.010(1). This appeal followed.

## DISCUSSION

### I. *Appellant's Confession*

Appellant argues that his written confession was involuntarily given, and that the district court erred in not suppressing it. According to appellant, he was kept painfully handcuffed for several hours, and Officer Hyatt told him the handcuffs would be removed only if he signed a written confession.

A confession is inadmissible unless freely and voluntarily

given. Rowbottom v. State, 105 Nev. 472, 482, 779 P.2d 934, 940 (1989). "In order to be voluntary, a confession must be the product of a 'rational intellect and a free will.' " Passama v. State, 103 Nev. 212, 213-214, 735 P.2d 321, 322 (1987)) (quoting Blackburn v. Alabama, 361 U.S. 199, 208 (1960)). In determining whether a confession is the product of a free will, this court employs a totality of the circumstances test. *Id.* at 214, 735 P.2d at 323. Unquestionably, however, a confession obtained by physical intimidation or psychological pressure is inadmissible. Townsend v. Sain, 372 U.S. 293, 307 (1963), *overruled on other grounds by* Keeney v. Tamayo-Reyes, 112 S.Ct. 1715, 1717 (1992).

The district court's decision regarding voluntariness is final unless such finding is plainly untenable. Boggs v. State, 95 Nev. 911, 913, 604 P.2d 107, 109 (1979). If appellant's allegations are true, then the district court's finding that his confession was voluntarily given cannot stand. Officer Hyatt and Agent Campbell, however, both testified at trial that appellant was neither threatened nor coerced by Officer Hyatt into giving his confession.[1] Agent Campbell also testified that he loosened the handcuffs when appellant complained of pain and removed them when appellant had to use the restroom. Though appellant disputes the testimony of these witnesses, in our view it cannot be said that the district court's decision is plainly untenable. *See* Bolden v. State, 97 Nev. 71, 624 P.2d 20 (1981) (where testimony conflicts, it is for the trier of fact to determine what weight and credibility to give the testimony). Thus, we hold that the district court did not err in admitting appellant's written confession.

## II. *Jury Instruction No. 7*

Jury Instruction No. 7 in this case reads as follows:

Your [sic] instructed that there is a statutory presumption that any person who has in his possession or under his control two (2) or more credit cards issued in the name of names of another person or persons *is presumed* to have obtained and possess such credit cards with the knowledge that they have been stolen.

*The law also presumes* that the person possessed the credit cards with the intent to circulate, use, sell or transfer them.

---

[1]Although Agent Rollins did not testify at trial, he did testify at appellant's suppression hearing that Officer Hyatt in no way coerced or threatened appellant.

> These presumptions do not apply with [sic] a person who possess [sic] the credit card with the consent of the cardholder.

(Emphasis added.) Appellant contends that the presumptions contained in this instruction are mandatory and therefore improper, and that the district court committed error in giving this instruction. We agree.

As the United States Supreme Court has noted, "inferences and presumptions are a staple of our adversary system of factfinding." *Ulster County Court v. Allen*, 442 U.S. 140, 156 (1979). Even so, distinctions are made between permissive and mandatory presumptions. A permissive presumption suggests a "possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Francis v. Franklin*, 471 U.S. 307, 314 (1985). Moreover, with a permissive presumption, the State is still required to convince the jury beyond a reasonable doubt that "the suggested conclusion should be inferred based on predicate facts proved." *Id.* A mandatory presumption, on the other hand, is typically cast in the language of a command and tells a jury "it must infer the presumed facts if the State proves certain predicate facts." *Id.* In Sandstrom v. Montana, 442 U.S. 510 (1979), the high court held that mandatory presumptions violate the due process clause of the Fourteenth Amendment, which requires a state to prove every element of the charged crime.

In Nevada, presumptions are statutorily governed by NRS 47.230, which provides in relevant part:

> 2. The judge shall not direct the jury to find a presumed fact against the accused. When the presumed fact establishes guilt or is an element of the offense or negatives a defense, the judge may submit the question of guilt or of the existence of the presumed fact to the jury, if, but only if, a reasonable juror on the evidence as a whole, including the evidence of the basic facts, could find guilt or the presumed fact beyond a reasonable doubt. . . .

According to previous decisions of this court, while jury instructions phrased in the form of permissible inferences may satisfy NRS 47.230, those phrased in mandatory language do not. *See* Marshall v. State, 95 Nev. 802, 804, 603 P.2d 283, 284 (1979); Ricci v. State, 91 Nev. 373, 381, 536 P.2d 79, 83-84 (1975).

In Brackeen v. State, 104 Nev. 547, 763 P.2d 59 (1988), the appellant challenged a jury instruction identical in all relevant aspects to Jury Instruction No. 7. We held that the phraseology employed in the challenged instruction violated NRS 47.230(2), which commands that a judge shall not direct the jury to find a

presumed fact against the accused. *Id.* at 552, 763 P.2d at 62. The State offers no reason why the holding of *Brackeen* should not control in this case. Accordingly, we conclude that Jury Instruction No. 7 violated NRS 47.230(2) and that the district court erred in giving this instruction.[2]

In addition to contravening NRS 47.230(2), the district court violated NRS 47.230(3). Under that statute, whenever the existence of a presumed fact against the accused is submitted to the jury, the district court must charge the jury that while the law permits the jury to regard the basic, or predicate, facts as sufficient evidence of the presumed fact, the law does not require the jury to do so. In addition, where, as here, the presumed fact establishes guilt or is an element of the offense charged, the trial court must instruct the jury that the existence of the presumed fact must, on all the evidence, be proved beyond a reasonable doubt. Although the jury in the present case was given a general instruction that the prosecution must prove beyond a reasonable doubt every material element of the offense charged, the district court failed to give the specific instructions mandated by NRS 47.230(3). Our previous decisions make clear that this failure is error. *See, e.g., Brackeen,* 104 Nev. at 552, 763 P.2d at 62.

Thus, we hold that the district court erred both in giving Jury Instruction No. 7 and in failing to give the instructions required by NRS 47.230(3). It remains for us to consider whether, as the State contends, these errors are harmless.

We have held that violations of NRS 47.230 will not be deemed harmless where the erroneous instruction concerns an essential element of the offense charged, *see, e.g., id.;* Hollis v. State, 96 Nev. 207, 209, 606 P.2d 534, 536 (1980); *Marshall,* 95 Nev. at 804, 603 P.2d at 284, and Jury Instruction No. 7 concerns appellant's presumed intent to circulate, use, sell or transfer stolen credit cards, which is an essential element of the offense charged.[3] *See* NRS 205.760(1). Today, however, we clarify our

_____

[2]Because we conclude that Jury Instruction No. 7 violated NRS 47.230(2), we need not consider whether the instruction violated the due process clause of the Fourteenth Amendment. *See* Spears v. Spears, 95 Nev. 416, 596 P.2d 210 (1979) (this court need not consider constitutional issues that are not necessary to the determination of an appeal).

[3]Jury Instruction No. 7 also contains a mandatory presumption concerning appellant's knowledge that the credit cards had been stolen. However, because such knowledge is not an essential element of the offense charged, we readily conclude that this mandatory presumption does not require reversal of appellant's judgment of conviction.

position on this issue to reflect recent decisions of the United States Supreme Court. Henceforth, we shall apply harmless-error analysis in those "rare situations" when we "can be confident that [the] error did not play any role in the jury's verdict." Connecticut v. Johnson, 460 U.S. 73, 87 (1983) (plurality opinion).

In *Johnson*, the plurality opinion mentioned as among those "rare situations" an instruction establishing a mandatory presumption on a charge of which the defendant was acquitted (and not affecting other charges), and an instruction establishing a mandatory presumption with regard to an element of the crime that the defendant in any case admitted. *Id.* In Rose v. Clark, 478 U.S. 570 (1986), the Court recognized a third such situation: When the predicate facts relied upon in the instruction, the existence of which the jury has found beyond a reasonable doubt, conclusively establish the ultimate fact to be presumed (the essential element of the offense charged) so that no rational jury could find those predicate facts without also finding that ultimate fact. *See also* Carella v. California, 491 U.S. 263, 266 (1989).

As stated above, Jury Instruction No. 7 establishes a mandatory presumption with regard to appellant's intent. In his confession, which elsewhere in this opinion we have held was voluntarily given and, therefore, properly admitted at trial, appellant admitted his intent to use the credit cards "to purchase personal items for myself." Therefore, we hold that the district court's giving of Jury Instruction No. 7 and its failure to give the instructions mandated by NRS 47.230(3) were harmless error.[4]

### CONCLUSION

With respect to appellant's written confession, we conclude that the district court's findings of voluntariness is not plainly untenable. As to Jury Instruction No. 7, we hold that the district court erred both in giving the jury instruction and in failing to give the instructions required by NRS 47.230(3). But because appellant admitted in his confession his intent to use the credit cards, we conclude that these errors are harmless beyond a reasonable doubt.

Accordingly, we affirm appellant's judgment of conviction.

SPRINGER, J., concurring:

I join in affirming the conviction but not in the opinion of the

---

[4]While we conclude that mandatory presumptions concerning an essential element of the offense charged are subject to harmless error analysis, we continue to urge and expect our district courts to refrain from instructing juries with such presumptions.

court. I am satisfied that any error in giving Instruction No. 7 was harmless beyond a reasonable doubt and that we are not required to reverse on federal grounds.